STATE of Indiana, ex rel., Eugene E. WILLIAMS and Walter Davidson, individually and as representing a class of others similarly situated, others being too numerous to mention, Plaintiffs-Appellants,

v.

Richard G. LUGAR, Mayor of the City of Indianapolis, Donald Lamb, Chief of the Indianapolis Fire Department, Lawrence L. Buell, Treasurer of Marion County, Indiana, Donald Lamb, President, Ralph Graham, Secretary, and Donald Wolf, Joseph Olafson, Richard Harding, William Fitzgerald and Charles Koers, all as members of the Board of Trustees of the Fire Pension Fund of the City of Indianapolis, Indiana, Defendants-Appellees.

No. 1–278A38.

Court of Appeals of Indiana,
First District.

May 29, 1979.

Ruckelshaus, Bobbitt & O'Connor, Indianapolis, R. Michael Gholston, Franklin, for plaintiffs-appellants.

Shelia Suess, David F. McNamar, David E. Jones, Indianapolis, for defendants-appellees.

LOWDERMILK, Presiding Judge.

## STATEMENT OF THE CASE

Plaintiffs-appellants Eugene E. Williams and Walter Davidson filed this class action for declaratory judgment, mandate, and damages to recover additional pension benefits for retired and disabled fire fighters and widows and next of kin of fire fighters of the City of Indianapolis. Appellants were seeking the difference between the pension benefits already paid and those payable if the pension base had been calculated (a) including the amount of the clothing allowance, and (b) using appellants' definition of "a fully paid first class fireman" since 1965. The Johnson Circuit Court entered judgment in favor of defendants-appellees Richard C. Lugar as Mayor of the City of Indianapolis, Donald Lamb as Chief of the Indianapolis Fire Department, *et al.*

## FACTS

Prior to 1965 the following ranks were recognized in the Indianapolis Fire Department:

(a) probationary—up to one year; appointment only.

(b) private—after one year; automatic.

(c) chauffeur—promotion only.

(d) lieutenant—promotion only.

(e) captain—promotion only.

In addition to regular wages, a fire fighter received longevity pay for each year of service.

Prior to 1964 the fire fighters' pension in Indianapolis was based upon the annual starting wage of a private.

In 1963 the Appellate Court decided *Kilfoil v. Johnson*, (1963) 135 Ind.App. 14, 191 N.E.2d 321. In that opinion the Appellate Court held that the Knox Circuit Court correctly construed the firemen's pension statute when it held that longevity pay must be included in determining the wage of "a fully paid first class fireman" for pension purposes.

In 1965 a new rank appeared in the Indianapolis Fire Department: corporal. A private with eleven years of experience automatically became a corporal.[1]

During and after 1965 the pension base was calculated by determining the wage paid to a private in his eleventh year of service.

### ISSUES

1. Should the clothing allowance be included in the pension base?

2. Was appellants' action barred by the doctrine of *res judicata*?

3. Did appellees act improperly in limiting the amount of the pension base?

4. Did the trial court err in finding appellants barred from recovery by the doctrine of laches and by the statute of limitations?

*Issue One*

■ Appellants contend that the pension base should include the clothing allowance. After appellants filed their brief, the Supreme Court considered this issue in *Lugar v. State ex rel. Lee*, (1978) Ind., 383 N.E.2d 287. The clothing allowance is not includable as salary for purposes of calculating pension benefits.

1. A private and a corporal had the same duties. A private received no salary increase for advancing to the rank of corporal.

2. The class was described as follows in the amended complaint:
"That the plaintiffs and each of them, are former employees of the Indianapolis Fire Department, who are now in retirement and are receiving a pension and they bring this

*Issue Two*

■ Appellees raised *res judicata* as an affirmative defense. Appellants insist that *res judicata* is not a valid defense because the earlier action involved different parties and a different cause of action. In the alternative, appellants argue that the prior judgment cannot prevent recovery for any amounts due after the date of the prior judgment.

The Supreme Court offered the following explanation of *res judicata* in *Town of Flora v. Indiana Service Corp.*, (1944) 222 Ind. 253, 256, 53 N.E.2d 161, 163:

". . . There are two well defined branches of the rule of *res judicata*. The subject has often been confused by the loose use of descriptive terms. One branch of the subject deals with prior adjudication as a bar. Under it a cause of action finally determined between the parties on the merits by a court of competent jurisdiction, cannot again be litigated by new proceedings before the same or any other tribunal, except by way of review according to law. Such a judgment or decree so rendered is a complete bar to any subsequent action on the same claim or cause of action, between the same parties, or those in privity with them. *Every question which was within the issues, and which, under the issues, might have been proved, will be presumed to have been proved and adjudicated.* . . ." (Citations omitted; our emphasis)

On April 14, 1964, Charles N. Kersey, *et al.*[2] brought a class action as Cause No. 31756 in the Hancock Circuit Court. In their amended complaint the plaintiffs alleged that those persons responsible for computing the pension base had

action individually and as members of a class, and on behalf of all other individuals so similarly situated, that the class is comprised of all former member employees of the Indianapolis Fire Department either as a member thereof or as a widow or next of kin of a former deceased member thereof who are now or will be in the future receiving a pension as prescribed by law."

". . . not been paying the plaintiffs and others in their class similarly situated, 55% and 30% respectively, of the monthly wage received by a fully paid first class fireman; and that said defendants . . . [had] been basing the 55% and 30% respectively only on the salary of a probationary or first year fireman. . . ." (Our insertion)

In *Kersey, supra*, the parties submitted their evidence by stipulation. That evidence showed that (a) a longevity pay schedule was first adopted for the Indianapolis Fire Department in 1955; (b) during the years 1956–64 the pension base was determined by the base pay of a private without reference to longevity pay; (c) for the year 1965,

". . . the basis used by the City of Indianapolis for figuring the pension to all pensioners was the base pay of a probationary fireman on the fire force, said pay being $5,250 plus $700 longevity, which was the equivalent of a non-promoted fireman with ten years of service."

On March 1, 1966, the Hancock Circuit Court entered judgment in the amount of $900,000 in favor of those plaintiffs.

Having considered the allegations contained in the amended complaint filed in the Hancock Circuit Court, the membership of the class represented in that action, the evidence presented, and the precise wording of the judgment entered, we must hold that the judgment dated March 1, 1966 finally adjudicated all claims pre-dating March 1, 1966 concerning the firemen's pension benefits based upon longevity pay. The appellants could not relitigate their claims pre-dating March 1, 1966, in the action filed in 1974.

*Issue Three*

Appellants contend that the City of Indianapolis acted improperly in limiting the amount of longevity pay includable in the pension base. They offer seven reasons for this contention:

(1) Appellants argue on appeal that the City of Indianapolis did not have the power to define "a fully paid first class fireman"[3] because only the legislature possesses such power.

█ We are constrained to hold that the appellants have not preserved this issue for review. In the memorandum filed by appellants in support of their motion to correct errors, appellants stated:

"*Plaintiffs do not contend that the defendant City did not have the power or authority to create a rank of corporal and limit the amount paid to determine the pension base.* Plaintiffs do however contend and the evidence shows that the City never legally created the rank of corporal and in failing to do so left the pension base to be properly computed at the rate of pay given to the oldest person on the force below the rank of chauffeur, that being the first promoted rank pursuant to the merit promotion system." (Our emphasis)

Obviously, a court of review cannot address an issue when the appellants have specifically represented to the trial court that such an issue does not exist.[4]

(2 & 3) Appellants assert that, if the City had the power to limit the pension base by creating the rank of corporal, the City nevertheless failed to create such a rank by following proper procedures. They also contend that the City acted arbitrarily and capriciously.

In their amended complaint appellants charged that appellees failed to pay pensions based upon the wages received by a fully paid first class fireman. The appellees responded by showing at trial that the pension base was calculated by determining the wage of a private with eleven years of service; after eleven years of service a private became a corporal. The appellees presented evidence showing that the rank of corporal was defined and in use in the Indianapolis Fire Department in 1965. The rank was recognized in the city budget as

---

3. See IC 1971, 19–1–37–14 (Burns Code Ed., Supp. 1978).

4. Appellants made the same representation in post-trial briefs filed with the trial court.

early as 1965. Persons were being demoted to and promoted from the rank of corporal as early as 1965.

■ On appeal appellants repeatedly refer to an absence of evidence showing that the rank of corporal was duly created. After appellees presented evidence which proved that various departments of the local government recognized the rank as early as 1965, it then became the duty of appellants to go forward with the evidence challenging the alleged creation of such a rank. Appellants insisted that the rank was not duly created; appellants had the duty of proving that contention.[5] We find no error.

Appellants provide a definition of arbitrary or capricious action as taken from *State Board of Tax Commissioners v. Chicago, M., St. P. & Pac. R.R.*, (1951) 121 Ind. App. 302, 308–9, 96 N.E.2d 279, 282:

"Arbitrary or capricious action on the part of an administrative board means willful and unreasonable action, without consideration and in disregard of the facts or circumstances of the case; action taken without some basis which would lead a reasonable and honest man to such action. . . ." (Citations omitted)

■ In the record appears evidence that the rank of corporal was created in an effort to make it possible to budget, with reasonable accuracy, for the amounts payable to the pension fund, and to prevent major fluctuations, both upward and downward, in the pensions received by those intended to benefit. Furthermore, the evidence shows that the creation of the rank served, in part, as a tool for carrying out a bargained for agreement with the fire fighters' union, the terms of which established that the pension base would be determined by considering the pay of a private with eleven years of service; this agreement was made, in part, to eliminate the possibility of ending all longevity pay.

We do not find evidence of arbitrary and capricious action. We find a bargained-for resolution of the controversy as to whether or not the City would cease providing longevity pay as a result of the decision in *Kilfoil, supra.*

(4, 5 & 6) Appellants contend that the decision of the trial court contravenes certain basic principles.

Appellants cite authority for the proposition that the pension statute should be liberally construed in favor of those intended to benefit. They assume that they could benefit only by gaining the maximum amount of benefits.

The trial court heard evidence, however, showing that the action taken by appellees gave the pension program needed stability and eliminated grave fiscal problems threatening the entire program. In their argument appellants have asked this court to weigh the evidence and judge credibility of witnesses; this we may not do.

■ Appellants contend that the decision of the trial court contravenes case law requiring pensions to be computed on the basis of the wage of the highest paid first class fireman "based upon applicable evidence." Appellants insist that applicable evidence proves that the title of corporal is meaningless and that a person is a first class fireman until he advances to another rank by promotion. In other words, appellants argue that one cannot do indirectly that which cannot be done directly; since appellees could not peg the pension base as the pay of a private with eleven years of service, appellees should not be allowed to create the rank of corporal in order to limit the amount of longevity pay includable in the pension base.

The evidence reveals that the fire fighters' union, aware of the *Kilfoil* decision, demanded a pension base recognizing at

---

**5.** The trial court specifically found, *inter alia,* "that any error of commission or omission by the [appellees] was merely a procedural error and not of substance which could adversely affect the substantive rights of the [appellants]." Appellants specifically represented to the trial court: "[Appellants] do not contend that [appellees] did not have the power or authority to create a rank of corporal and limit the amount paid to determine the pension base." Accordingly, the trial court's finding is both reasonable and appropriate.

least twenty-five years of longevity pay. The City responded that the financial burden would be too great; also aware of the *Kilfoil* decision, the City suggested the possibility of eliminating longevity pay. As a compromise, both the fire fighters' union and the City agreed that the pension base would be set at the pay of a private with eleven years of service. The appellants now seek to retain the benefits of those contractual negotiations (longevity pay and pension benefits based upon longevity pay) while repudiating the limitation agreed upon during those negotiations. When the situation is viewed in that light, appellants are not in a secure position for invoking maxims of equity.

■ (7) Appellants argue on appeal that the creation of the rank of corporal impaired vested contract rights of those firemen who had retired previously.

We find no reference whatsoever to this issue before appellants filed their brief on appeal. Issues cannot be raised for the first time on appeal. Those issues omitted from the motion to correct errors are not preserved for review. *Peters v. Casey*, (1964) 245 Ind. 666, 201 N.E.2d 496; *Yerke v. Batman*, (1978) Ind.App., 376 N.E.2d 1211; *Indiana State Board of Tax Commissioners v. Pappas*, (1973) 158 Ind.App. 327, 302 N.E.2d 858.

*Issue Four*

Appellants contend that the trial court erred in finding them barred from recovery by the doctrine of laches and by the statute of limitations. Because appellants did not prevail in Issue Three, a resolution of Issue Four favorable to appellants cannot alter the outcome of their appeal. We will comment briefly, however, concerning the doctrine of laches.

■ Laches consists of three elements: (1) an inexcusable delay in asserting a right; (2) the implied waiver which arises from knowing acquiescence in existing conditions; and (3) resulting prejudice to the adverse party. *State ex rel. Crooke v. Lugar*, (1976) Ind.App., 354 N.E.2d 755. Appellants allege only that the third element is missing.[6]

■ Appellants' action filed in 1974, as it related to longevity pay, covered the period from 1965. The evidence shows that appellants had knowledge of the manner in which the pension base was computed during all of that time. They knew or had reason to know of the recognition of the rank of corporal during all of that time. Yet they waited until 1974 and then attempted to collect millions of dollars in past benefits. The evidence shows that appellees continued paying longevity pay during those years with the belief that the pension base was firmly established with recognition of the rank of corporal. The pension fund reports show that the fund did not include nearly enough money to satisfy appellants' tardy demands. We find sufficient evidence of prejudice caused by the delay.

Appellants have failed to demonstrate reversible error.[7] The judgment of the trial court is affirmed.

LYBROOK and ROBERTSON, JJ., concur.

---

6. Appellants note that the trial court did not specifically find that appellees had been prejudiced by the delay; they argue that the absence of such a finding is the equivalent of a finding that no prejudice resulted. Ind.Rules of Procedure, Trial Rule 52(D) provides, however, that the failure to find a fact shall not be resolved by any presumption. See also *Sekerez v. Board of Sanitary Commissioners*, (1974) 160 Ind.App. 13, 312 N.E.2d 98. Since appellants did not request findings of fact, they cannot complain that the trial court provided findings of fact on only some of the issues. Ind.Rules of Procedure, Trial Rule 52(D).

7. Appellants have argued in their brief that the judgment is contrary to law because (1) the trial court failed to make findings of fact with regard to material issues; and (2) if the trial court had made those findings of fact listed by appellants, a judgment in favor of appellants would have been required. The absence of specific findings of fact on all issues is not error, in light of appellants' decision not to request them. T.P.. 52. The second portion of this argument is answered in the specific issues considered herein.