


FILED

Mar 03 2020, 9:22 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Indiana Supreme Court

Supreme Court Case No. 19S-CT-549

## Bryce A. Burton,
*Appellant,*

−v−

## Martin Benner and Indiana State Police,
*Appellees.*

Argued: November 26, 2019 | Decided: March 3, 2020

Appeal from the Benton Circuit Court
No. 04C01-1612-CT-176
The Honorable Hunter J. Reece, Special Judge

On Petition to Transfer from the Indiana Court of Appeals
No. 19A-CT-135

**Opinion by Justice David**

Chief Justice Rush and Justices Massa, Slaughter, and Goff concur.

**David, Justice.**

Certain negligent acts or omissions on the part of a government employee have the potential to remove the shield of respondeat superior and expose the employee to personal liability. Under the Indiana Tort Claims Act, there are only a handful of well-delineated pathways to accomplish this task. One of those paths is to show that the employee's act or omission was "clearly outside the scope of the employee's employment." Ind. Code § 34-13-3-5(c)(2).

Here, Bryce Burton attempted to sue Indiana State Trooper Martin Benner in his personal capacity after the two were involved in an accident in rural Benton County. At the time of the accident, Trooper Benner was off duty but was operating his state issued police commission as allowed under State Police policy. Arguing he was acting within the scope of his employment at the time of the accident, Benner sought summary judgment on whether he could be held personally liable for any damages that flowed from the incident. The trial court awarded summary judgment in favor of Benner because though off duty, Benner was otherwise in substantial compliance with State Police policy in operating his commission and was therefore not clearly outside the scope of his employment. The Court of Appeals reversed, opining that reasonable minds could disagree whether the trooper was outside the scope of his employment and summary judgment was thus inappropriate.

We granted transfer and now find that, although there is some evidence that Trooper Benner was not in strict compliance with State Police policy at the time of the accident, this was not enough to place him "clearly outside" the scope of his employment. Accordingly, we affirm the judgment of the trial court.

## Facts and Procedural History

As of 2015, Indiana State Trooper Martin Benner had been employed by the Indiana State Police for eighteen years. As part of his employment, the State Police issued Benner an unmarked 2012 Dodge Charger—commonly referred to as the trooper's "commission." Troopers that operate State

Police commissions are subject to a Standard Operating Procedure that establishes guidelines for the operation of the vehicle when the officer is on- or off-duty and during both emergency and non-emergency driving situations. Under the policy, employees that operate a commission are required, among other things, to maintain radio contact at all times (even while off-duty), to not violate any traffic law unless necessary in performance of official duties, and to respond to emergency situations if they are "assigned or made aware of a nearby situation." (Appellant's App. Vol. 2 at 37-39.) The policy also authorizes employees to exercise *de minimis* use of their commission for limited and reasonable personal transportation.

On June 4, 2015, Trooper Benner completed his road patrol duties for the day, went home to take a shower, and re-entered his commission to drive to his son's baseball game. Now in street clothes, Benner was traveling southbound on Meridian Road south of State Road 352 in Benton County when he decided to pass the vehicle in front of him after northbound traffic cleared. As he departed the southbound lane, he noticed a motorcycle in the northbound lane approaching him from approximately 139 yards away. Benner quickly slowed his vehicle and moved back into his own lane, but not before the oncoming motorcycle locked its brakes, swerved from side to side, rolled over, and ejected both the operator—Plaintiff Bryce Burton—and Burton's passenger.

Burton filed suit against Benner alleging the trooper was negligent in operating his vehicle and seeking damages for the injuries he sustained in the accident. Benner moved for summary judgment, arguing that he was acting within the scope of employment while driving his commission and was thus immune from personal liability under Indiana Code chapter 34-13-3 (Tort Claims Against Governmental Entities and Public Employees). Benner also alleged that Burton was contributorily negligent so as to bar

recovery under the common law.[1] The trial court granted partial summary judgment on the first issue in Trooper Benner's favor, finding that he was not "clearly outside" the scope of his employment when the incident occurred.[2] After the Indiana State Police was added as a defendant, Benner sought and obtained dismissal of the suit against him in his personal capacity. Burton appealed.

In a unanimous opinion, the Court of Appeals reversed. *Burton v. Benner*, 127 N.E.3d 1198, 1200 (Ind. Ct. App. 2019). While the "salient facts [were] undisputed," the Court of Appeals found "the inferences that can be made from and conclusions that can be based on those facts are anything but." *Id*. Thus, the Court of Appeals concluded summary judgment in favor of Trooper Benner was inappropriate because reasonable factfinders could disagree on whether Benner was acting outside the scope of his employment at the time of the accident. *Id*.

The State sought transfer, which we granted, thereby vacating the Court of Appeals opinion. Ind. Appellate Rule 58(A).

## Standard of Review

When this Court reviews a grant or denial of a motion for summary judgment, we "stand in the shoes of the trial court." *Murray v. Indianapolis Public Schools*, 128 N.E.3d 450, 452 (Ind. 2019) (quoting *Campbell Hausfeld/Scott Fetzer Company v. Johnson*, 109 N.E.3d 953, 955-56 (Ind. 2018)). We ask, "whether there is a genuine issue of material fact, and whether the moving party is entitled to judgment as a matter of law."

---

[1] *See Mangold ex rel. Mangold v. Indiana Dep't of Natural Resources*, 756 N.E.2d 970, 977 (Ind. 2001) (Shepard, C.J., concurring and delivering the Court's opinion in Part III) (explaining claims brought against government entities under the Indiana Tort Claims Act are subject to the common law theory of contributory negligence which bars a plaintiff's recovery if the plaintiff was even slightly negligent).

[2] The trial court denied summary judgment on Benner's contributory negligence theory. Accordingly, Burton sought—and was granted—leave to amend his complaint to add the Indiana State Police as a defendant.

*Goodwin v. Yeakle's Sports Bar and Grill, Inc.*, 62 N.E.3d 384, 386 (Ind. 2016) (citation omitted). The party moving for summary judgment bears the burden of making a prima facie showing that there is no issue of material fact and that it is entitled to judgment as a matter of law. *Id*. The burden then shifts to the non-moving party to show the existence of a genuine issue. *Id*. On appellate review, we resolve "[a]ny doubt as to any facts or inferences to be drawn therefrom … in favor of the non-moving party." *Id*.

Summary judgment is appropriate if the designated evidence "shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C).

## Discussion and Decision

Because Trooper Benner raised an affirmative defense that he was immune from personal liability under the Indiana Tort Claims Act ("ITCA"), the issue in this case is whether Benner was acting "clearly outside" the scope of his employment at the time of the accident such that he could be held personally liable for the injuries sustained by Burton. The State urges us to affirm the trial court's order granting summary judgment in favor of Benner on this issue, while Burton argues there is a genuine issue of material fact that should be decided by a jury.

The ITCA "governs lawsuits against political subdivisions and their employees." *Bushong v. Williams*, 790 N.E.2d 467, 472 (Ind. 2003); Ind. Code § 34-13-3-1 et seq. The statute sets forth certain parameters to determine liability for negligent acts or omissions on the part of government employees and "provides substantial immunity for conduct within the scope of the employee's employment." *Id*. "The purpose of immunity is to ensure that public employees can exercise their independent judgment necessary to carry out their duties without threat of harassment by litigation or threats of litigation over decisions made within the scope of their employment." *Celebration Fireworks, Inc. v. Smith*, 727 N.E.2d 450, 452 (Ind. 2000) (citation omitted). Relevant to the present case, "A lawsuit filed against an employee personally must allege that an act or omission of the employee that causes a loss is … **clearly** outside the

scope of the employee's employment." Ind. Code § 34-13-3-5(c)(2) (emphasis added).[3]

Generally speaking, "whether an employee's actions were within the scope of employment is a question of fact to be determined by the factfinder." *Knighten v. East Chicago Housing Authority*, 45 N.E.3d 788, 794 (Ind. 2015) (citation omitted). When the facts are undisputed and "would not allow a jury to find that the tortious acts were within the scope of employment," however, a court may conclude as a matter of law that the acts were not in the scope of employment. *Cox v. Evansville*, 107 N.E.3d 453, 460 (Ind. 2018).

Under the doctrine of respondeat superior, an employee's act or omission falls within the scope of employment if the injurious behavior is incidental to authorized conduct or furthers the employer's business to an appreciable extent. *Knighten*, 45 N.E.3d at 792 (citation omitted). Conversely, "an employee's act is not within the scope of employment when it occurs within an independent course of conduct not intended by the employee to serve any purpose of the employer." *Id*. (quoting *Barnett v. Clark*, 889 N.E.2d 281, 284 (Ind. 2008)). But "an employee's wrongful act may still fall within the scope of his employment if his purpose was, to an appreciable extent, to further his employer's business, even if the act was predominantly motivated by an intention to benefit the employee himself." *Id*. Ultimately, we have found that "the scope of employment encompasses the activities that the employer delegates to employees or authorizes employees to do, plus employees' acts that naturally or predictably arise from those activities." *Cox*, 107 N.E.3d at 461.

Viewing this lawsuit through the ITCA, the question becomes whether Trooper Benner was "clearly outside" the scope of his employment when the accident occurred. The State urges that Trooper Benner was within the

---

[3] Indiana Code section 34-13-3-5(c) also authorizes a lawsuit to be filed against an employee personally if the plaintiff alleges the employee's act or omission is criminal, malicious, willful and wanton, or calculated to benefit the employee personally. Those circumstances have not been alleged in the present suit.

scope of employment because, even though he was off duty, he was required by State Police policy to maintain radio contact, respond to emergencies, carry a firearm, and conform to a certain dress code. This, the State argues, furthers State Police business by providing an increased, more visible presence on the roads. Additionally, the State believes that if Benner's acts *arguably* fell within the scope of his employment, then by definition the acts cannot be "clearly outside" the scope of his employment.

Burton, on the other hand, argues that Benner's actions had no causal connection to his employment and any minimal compliance with State Police policy should not immunize the trooper from personal liability. Unlike cases where police misconduct occurred while officers were on duty, *see Cox*, 107 N.E.3d at 463-64, Burton urges this Court to find that no nexus of employment existed in this case because there was a complete divorce in time and activity between the end of Benner's shift and the accident. For the reasons expressed below, we agree with the State that Benner's involvement in the accident was not "clearly outside" the scope of his employment.

The undisputed evidence in this case indicates Trooper Benner complied with the vast majority of State Police procedures for operating his police commission while off duty. His "conduct [was] of the same general nature as that authorized, or incidental to the conduct authorized" by the State Police, *Bushong*, 790 N.E.3d at 473 (quoting *Celebration Fireworks*, 727 N.E.2d at 453), and included maintaining radio contact and conforming to a dress code. Additionally, as the trial court observed, Benner's presence on the road and his ability to respond to nearby emergency situations undoubtably provided a benefit to the State Police through increased police presence on the roads. This ability to suddenly become available for official duties certainly "furthers his employer's business." *Id*. (citation omitted). *Compare with Cox*, 107 N.E.3d at 462 ("[T]ortious acts are not within the scope of employment when they flow from a course of conduct that is independent of activities that serve the employer").

To the extent Burton argues Trooper Benner's violation of traffic laws exposed him to personal liability under the ITCA, we disagree.[4] True, State Police policy expressly prohibits violation of traffic laws, but in our view, the violation in this case did not move Benner "clearly outside" the scope of his employment. Recall that the scope of employment "may include acts that the employer expressly forbids" or "that violate the employer's rules, orders, or instruction." *Cox*, 107 N.E.3d at 461. While State Police policy forbids speeding in non-emergency situations, speeding could "naturally or predictably arise" from driving a commission even while off duty. *See id*. at 461-62. The "clearly outside" standard set forth in Indiana Code section 34-13-3-5(c)(2) represents a high bar and, in this case, we are not convinced that bar has been cleared.

To be sure, there is no precise formula to determine whether an act is "clearly outside" the scope of employment. There could certainly be circumstances that would oblige such a finding, but given the evidence presented in this case, we cannot say Trooper Benner was acting clearly outside the scope of his employment.

## Conclusion

We find that there is no genuine issue of material fact as to whether Trooper Benner was acting "clearly outside" the scope of his employment. As such, the trial court properly granted Benner's motion for summary judgment on this issue.

The judgment of the trial court is affirmed.

---

[4] The speed limit in the area of the accident was fifty-five miles per hour. Although conflicting testimony estimated Benner's speed at between sixty-two and sixty-five miles per hour before he began to brake, there is no dispute he was operating his commission beyond the speed limit while he attempted to pass the other vehicle.

Rush, C.J., and Massa, Slaughter, and Goff, JJ., concur.


ATTORNEYS FOR APPELLANT
Karl L. Mulvaney
Margaret M. Christensen
Nana Quay-Smith
Bingham Greenbaum Doll, LLP
Indianapolis, Indiana

R.T. Green
Kellie C. Clark
Collin W. Green
Blackburn & Green
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Curtis T. Hill, Jr.
Attorney General of Indiana

Aaron T. Craft
Deputy Attorney General
Indianapolis, Indiana